**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

**UNITED STATES OF AMERICA,**

v.

**ELIJAH RITTER,**

       **Defendant.**

_____

1: 22-po-00007-WAL-EAH

**TO:**    Daniel H. Huston, Esq., AUSA
          Kye Walker, Esq.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court for a Bench Trial on July 7, 2022 concerning a March 2022 Violation Notice issued to Defendant Elijah Ritter by National Park Service ("NPS") Ranger Stuart Beaudry at the Buck Island Reef National Monument ("Buck Island"), St. Croix. Ritter was cited for failing to maintain at least a 12-foot distance between his boat and other boats anchored nearby, a rule issued pursuant to 36 C.F.R. § 1.5(f). The Court concludes that Ritter is not guilty of the violation.

### BACKGROUND

**I.    Citation**

On March 13, 2022, NPS Ranger Beaudry issued a Violation Notice to Ritter for a violation of 36 C.F.R. § 1.5(f)—"Rafting-Failure to Maintain Distance."[1] Dkt. No. 1. In the Statement of Probable Cause attached to the violation notice, Beaudry averred that:

---

[1] During the bench trial, the Government clarified that rafting—the tying together of boats— was not at issue in this case; only the failure to maintain a 12-foot distance between boats

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 2

- On March 13, 2022 at approximately 1400 hours, at Buck Island, he and Supervisory Park Ranger G. Laurencin were on patrol when he observed 5 vessels anchored close to each other. "Vessels must maintain a distance of (12) feet minimum from opposing vessels." Beaudry's vessel was 8 feet 6 inches wide, and could not fit between any of the five vessels.
- Laurencin activated the emergency lights and Beaudry attempted to verbally address the captains, operators, and/or owners of the vessels, but no one stepped forward.
- Beaudry observed a white vessel within the 12-feet minimum distance, identified the owner as Ritter, and issued a violation notice at approximately 1536 hours for "closures and public use limits pursuant to 36 CFR 1.5(f)."

Dkt. No. 1-2. That regulation provides:

> Violating a closure, designation, use or activity restriction or condition, schedule of visiting hours, or public use limit is prohibited.

36 C.F.R. § 1.5(f). [2]

## II. Bench Trial

### A. Government's Case

The Bench Trial took place on July 7, 2022. Park Rangers Beaudry and Laurencin testified for the Government; Robert Ramsingh testified for the Defendant.

Beaudry testified that, while on patrol with Laurencin on Sunday, March 13, 2022 at Buck Island, they encountered five vessels that failed to maintain the 12-foot minimum distance from one another. They approached the vessels in their patrol vessel and Beaudry

---

was before the Court.
[2] Congress has delegated regulatory authority to the National Park Service to control visitor use of national parks in order to protect their natural resources. 36 C.F.R. § 1.5(a) (pursuant to 16 U.S.C. §§ 1, 3, 9a). This regulation grants park superintendents the authority to impose restrictions on otherwise permissible activities within the parks. *Id.*

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 3

attempted to get the attention of the captains or owners of the vessels verbally and visually by waving his hands and having them come forward. He recognized Ritter on one of the vessels who looked over initially and then turned away. Laurencin then spoke over the intercom to ask the captains to step forward but "no one came forward." Beaudry wrote out the citations; when the NPS vessel reapproached, a "passenger" stepped forward from Ritter's boat. Beaudry instructed the passenger to give the citation to the captain/owner; the passenger gave it to Ritter.

On cross-examination, Beaudry was asked about the 12-foot regulation. He stated that it was found in 36 C.F.R. § 1.5(f) and that it could be found on the NPS website. Asked what the regulation said exactly, Beaudry responded that vessels must maintain a 12-foot distance from each other. Beaudry also stated the rule could be found in the Superintendent's Compendium but he had not seen it anywhere else.

Beaudry was asked how he knew the passenger to whom he gave the citation was not an operator of the vessel, as he admitted he had not seen Ritter by the boat's steering wheel. He answered that he asked the person who came aboard the Rangers' vessel to give the citation—which was made out to Ritter—to the captain/owner/operator. Beaudry did not recall that person saying that he was the operator of Ritter's boat. Although the person who came forward had a conversation with Laurencin that Beaudry did not hear, Beaudry issued the citation to Ritter. He did not recall whether he had a conversation with Laurencin about what Laurencin discussed with the man before he issued the citation. As

...

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 4

to how he decided to issue the citation to Ritter, Beaudry responded that Laurencin would have told him if the person was the owner, operator or captain. He cited Ritter because he was the owner of the vessel.

Laurencin testified similarly about his and Beaudry's attempts to contact the owners/operators/captains of the five vessels when they approached in their patrol vessel, and that Ritter looked at the patrol boat and turned around. After about 20 minutes, a man named "Robbie" stepped forward and they had a conversation about the 12-foot distance. As to why the citation was given to Ritter and not Robbie, Laurencin said it was because he knew Ritter to be the owner of the boat.

Laurencin also testified that, on June 10, 2020, then-Park Superintendent Gregory Camacho had issued an Administrative Order to provide guidance in maintaining public health and safety during the COVID-19 pandemic emergency upon the reopening of Buck Island. (Govt Ex. 8). That Order described restrictions and public use limits at Buck Island in 11 bullet points. It provided, in relevant part:

> Restrictions and Public Use Limits. Under the authority provided to the Superintendent in 36 CFR[1.5 and 13.50] the following activities are restricted in Buck Island Reef National Monument effective immediately, until further notice:
> * * *
> * Maintain distance between vessels at twelve (12) feet minimum.

*Id.* The Order also stated that it was "effective June 10, 2020 and will remain in effect until further notice. The effectiveness of this order will be assessed on an ongoing basis and will be modified or removed when conditions warrant." *Id.* Asked whether the NPS publicized

the order, Laurencin stated that NPS drafted a news release to inform the public about it. Govt Ex. 9. The 3-page, single-spaced news release sent to media outlets referred to the 12-foot distance between vessels in a bullet-point list of 13 items that were now restricted. Several media outlets published all or part of the news release, which were admitted as exhibits: a June 18, 2020 article from the VI Consortium that referred to the 12-foot rule (Govt Ex. 11); a June 19, 2020 article from the VI Source that referred to the 12-foot rule (Govt Ex. 12); a July 7, 2020 article from the VI News that read "boats are asked to stay at least 12 feet apart" (Govt Ex. 13); an August 12, 2021 article from the VI Consortium that provided "Maintain distance between vessels" (Govt Ex. 14); and a June 17, 2020 Buck Island Facebook screen shot that stated: "Maintain distance between vessels at (12) feet minimum." (Govt. Ex. 15). Laurencin stated that he participated in a radio talk show during which he discussed the 12-foot rule; while he could not recall the date of the interview, it was after the rule was enacted.

On cross-examination, Laurencin was asked whether the order promulgated by former Superintendent Camacho was the only order he relied on for the belief that vessels had to maintain a 12-foot distance. He responded that he relied on that Order and the Superintendent's Compendium, which was an order as well. With regard to the interaction with "Robbie," Laurencin acknowledged that he had seen Robbie operate Ritter's boat several times previously. When asked if Robbie told him he was operating the vessel the day the citation was issued, Laurencin said he did not recall; when asked whether Robbie

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 6

mentioned to him that it would make more sense to approach the vessels at the ends of the line of vessels to ask them to move (since Ritter's boat was in the middle), Laurencin stated he did not recall; when asked whether Robbie stated that he would tell the captains of the boats to move further out, Laurencin stated he did not recall. He did not observe Ritter's boat attempt to correct the issue.

### B. Motion for Directed Verdict

At the close of the Government's case, Ritter moved for a directed verdict, arguing that (1) the wording of the rule was ambiguous; (2) if the rule required that a 12-foot distance must be maintained, and an individual would have to act willfully to violate the rule, then why would the owner, rather than the operator of the vessel be cited, since the operator acted willfully and had control of the vessel and no law stated that a citation was issued against the vessel as opposed to an individual; (3) the Park Rangers purposefully targeted the vessel since it was in the middle of the line of five vessels.

The Government responded that the vessel was owned by Ritter and he was on the vessel—this was analogous to issuing a parking violation where the owner of the boat gets the ticket, as the boat violated the order, no matter who operated it; willfulness was exhibited by Ritter when he ignored the Rangers when they tried to interact with his boat; and Ritter was not singled out because five individuals were cited that day.

The Court deferred ruling on the motion.

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 7

### C. Defendant's Case

The Defendant called Robert Ramsingh, who testified that, over the past five years, he often operated Ritter's boat; on weekends, he would operate the boat when Ritter was on it, as he was doing on March 13, 2022. He left from Gallows Bay and had anchored the vessel at Buck Island. He saw the Park Service boat coming up with Beaudry waving his hands, and he told Ritter not to worry and to let him deal with it. He sought permission to board the NPS vessel and spoke to Beaudry and Laurencin, telling them that he was operating Ritter's vessel and suggested moving the boats to make more room. He moved one of the boats and then went to the next boat to have it move but the captain was not on board; he went to the next boat and was explaining his suggestion to that captain when he saw the Rangers' boat coming between the boats. Everyone was in an uproar because the Rangers were giving tickets. A ticket was placed on Ritter's boat; he was not given a ticket to give to Ritter.

In closing, Ritter's counsel argued that Ramsingh's testimony made clear that he responded to Beaudry's waving arms, he was the person operating Ritter's vessel but the Rangers cited Ritter, the Government had not established the distance between vessels and had not met its burden of proof. The Government responded that people on the boats refused to speak to the Rangers, the fenders between the boats were almost touching so the distance was clear, and an owner was responsible for his boat.

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 8

## DISCUSSION

The Court concludes that Ritter is not guilty of the charged violation for two separate and independent reasons.

### I. The Regulatory Landscape

Congress has delegated regulatory authority to the National Park Service to control visitor use of national parks in order to protect their natural resources. 36 C.F.R. § 1.5(a). This regulation grants park superintendents the authority—and allows them the flexibility—to impose restrictions on otherwise permissible activities within the parks. *Id.* The regulation is concerned with the specific and sometimes transient needs of individual parks, and provides the means for tailoring the use of a given park to the particular circumstances of that park. *United States v. Lofton*, 233 F.3d 313, 317 (4th Cir. 2000). Violating a closure, designation, use, or activity restriction or condition, or public use limit, is prohibited. 36 C.F.R. § 1.5(f).[3]

Section 1.5(e) provides that, if the Superintendent exercises authority under 1.5(a), the public must be informed of those use or activity restrictions or conditions "in

---

[3] A violation of § 1.5 may subject a person to the following sanctions:

> A person convicted of violating a provision of the regulations contained in parts 1 through 7. . . of this chapter shall be subject to the criminal penalties provided under 18 U.S.C. § 1865 [i.e. imprisoned not more than 6 months, fined under this title or both].

36 C.F.R. § 1.3.

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 9

accordance with § 1.7 of this chapter." 36 C.F.R. § 1.5(e). This provision, entitled "Public Notice," contains two sections: § 1.7(a) provides examples of how notice of these new rules to the general public must be properly given (when the rules are promulgated), and § 1.7(b) sets forth how the public may be on notice that the rules have been updated. Section 1.7 provides:

> (a) Whenever the authority of § 1.5(a) is invoked to restrict or control a public use or activity, to relax or revoke an existing restriction or control, to designate all or a portion of a park area as open or closed, or to require a permit to implement a public use limit, the public shall be notified by one or more of the following methods:
>     (1) Signs posted at conspicuous locations, such as normal points of entry and reasonable intervals along the boundary of the affected park locale.
>     (2) Maps available in the office of the superintendent and other places convenient to the public.
>     (3) Publication in a newspaper of general circulation in the affected area.
>     (4) Other appropriate methods, such as the removal of closure signs, use of electronic media, park brochures, maps and handouts.
> (b) In addition to the above-described notification procedures, the superintendent shall compile in writing all the designations, closures, permit requirements and other restrictions imposed under discretionary authority. This compilation shall be updated annually and made available to the public upon request.

36 C.F.R. § 1.7.

## II. Violation of the Provision; Notice

Regulation 1.5(a) lacks an explicit mental state requirement. Violations of such "general intent" provisions call for proof of knowledge and voluntariness. *See* 21 Am. Jur. 2d Criminal Law §§ 116, 117, 119 (2022). In this regard, the Government posits that, in order to find Ritter guilty of the 12-foot distance requirement, it had to show that Ritter "knowingly failed to maintain a minimum distance of 12 feet between his boat and other

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 10

boat [sic] at the Buck Island Reef National Monument": i.e., that he "knowingly violated a use or activity restriction" pertaining to that venue.  Dkt. No. 14 at 3.  The Government's description that a violation must be "knowing" is apt.  *See Resolution Tr. Corp. v. Fid. & Deposit Co. of Md.,* 205 F.3d 615, 639 (3d Cir. 2000) ("[T]he concept of general intent is synonymous with the Model Penal Code's mental state 'knowingly,' as a person acts knowingly under the Model Penal Code if he or she is aware that a result is practically certain to follow from his conduct, whatever his desire may be as to the result.") (internal quotation marks omitted).

To commit a violation knowingly requires a defendant "to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'"  *Rehaif. v. United States*, 139 S. Ct. 2191, 2195 (2019).  "Knowingly" is defined as "an act . . . done purposely and deliberately, and not because of accident, mistake, negligence, good faith or other innocent reason."  *United States v. Clendinen*, 699 F. App'x 109, 114 (3d Cir. 2017) (approving V.I. district court jury instruction defining 'knowingly').  Thus, the elements of this violation are that a defendant (1) failed to maintain a minimum distance of 12 feet between his boat and another boat, and that (2) he did so knowingly.

Here, while notice is not an element of the violation, reading regulation sections 1.5 and 1.7 together, it is clear that proper notice of the rules promulgated thereunder is mandatory, and must be given by NPS in order for the rules to be effective and therefore subject to enforcement.  This is understandable because these kinds of discretionary rules

are generally transitory, promulgated to respond to certain conditions, and do not follow the normal route of statutory approval by Congress or the regulatory route of being published in the Federal Register. *See United States v. McGaughey*, 977 F.2d 1067, 1074 (7th Cir. 1992) ("Just as everyone is charged with knowledge of United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.") (internal quotation marks omitted); *see also Higashi v. United States*, 225 F.3d 1343, 1349 (Fed. Cir. 2000) (publication in Federal Register provides legal notice "regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance."} (internal quotation marks omitted).

Here, the Government's own evidence leads to the conclusion that Ritter cannot be found guilty of violating § 1.5(f) in March 2022 by failing to maintain the 12-foot distance between boats. Even assuming that publication of NPS's press release containing the 12-foot requirement in some local newspapers and Laurencin's appearance on a radio talk show satisfied notice under § 1.7(a), the Government provided no evidence to show that the rule was updated and viable after 2020. It did not provide any evidence showing that it had compiled in writing these restrictions and that they were updated annually, pursuant to the notice provisions in § 1.7(b). The only evidence the Government provided that mentioned the rule after 2020 was an August 12, 2021 VI Consortium article that stated: "The following are *guides* to follow while visiting Buck Island: . . . Maintain distance between vessels." Govt Ex. 14 (emphasis added). The article's language is completely

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 12

permissive, mentioning a "guide" to boating behavior and does not set out any mandatory distance requirement. Members of the public could have reasonably concluded from the article's language that NPS had reassessed or modified the 12-foot rule, or that it no longer applied as the pandemic started to recede. *See* Superintendent's June 2020 Order: "The effectiveness of this order will be assessed on an ongoing basis and will be modified or removed when conditions warrant." Govt Ex. 8.[4]

Based on the evidence presented, the Court concludes that the public did not have sufficient notice of the rule in 2022; at the very least, its continued viability was in question. Even if Ritter was aware of the rule in 2020, it was arguably modified or no longer in effect in March 2022 and Ritter must be found not guilty of this violation.

---

[4] As additional support for the Court's reasoning, on May 12, 2022 under "Alerts & Conditions," the NPS Buck Island website contained no mention of a required minimum distance between vessels, much less specified a minimum distance of 12 feet. Rather, the language on the NPS website repeated the language from the Consortium's August 2021 article that the public should "maintain distance between vessels." *See* https://www.nps.gov/buis/planyourvisit/conditions.htm (last visited 7/11/22). This information was provided to the Court in a related case, *United States v. Ritter*, 19-cr-00018, where the Government sought to use Ritter's alleged violation of the 12-foot rule to modify his conditions of release in an ongoing criminal matter. 1:19-cr-00018, Dkt. No. 216-4. While the Court does not know whether this information was posted on the NPS website in March 2022, when Ritter received the violation notice, the language on the website is consistent with the language in the August 2021 Consortium article and provides support for the fact that, prior to the bench trial on the violation, the rule may have been reassessed and modified based on changed conditions, and may not have been viable in March 2022.

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 13

### III. Individual Liability

The second basis for acquittal rests on the fact that Beaudry cited Ritter, as the owner of the boat, for the 12-foot violation, rather than Ramsingh, who identified himself as the operator of the boat. The evidence indicates that, after the Rangers approached the line of boats and asked for the captains/owners/operators to come forward, Ramsingh came forward from Ritter's boat, was given permission to board the Rangers' vessel, and spoke at least with Laurencin. While Beaudry testified he did not hear what Laurencin discussed with Ramsingh, and Laurencin did not recall that Ramsingh identified himself as the operator, Ramsingh testified that he identified himself as the operator. That statement was not contradicted. Under these facts, the Park Rangers should have given Ramsingh the citation, as he was the one who was responsible for Ritter's boat remaining too close to the neighboring boats; he had the obligation to move the boat if it was in violation of a regulation.

The Government argues that Ritter, as the owner of the boat, was properly given the citation, analogizing this situation to a parking violation where the person to whom a car is registered is ticketed. But the circumstances here are more akin to a situation where a person driving a car was speeding and the owner was also in the car. The officer would give the ticket to the speeder operating the car for violating the speed limit, not the owner. Here, where an individual stepped up to identify his role as the operator, the citation should have properly gone to him.

*United States v. Ritter*
22-po-00007-WAL-EAH
Bench Trial Opinion & Order
Page 14

Accordingly, for the reasons stated, the Court finds Defendant Elijah Ritter **NOT GUILTY** of violating a closure, designation, use or activity restriction or condition pursuant to 36 C.F.R. § 1.5(f).  The Court denies Defendant's Rule 29 motion as moot.

ENTER:

Dated: July 22, 2022                    /s/ Emile A. Henderson III
                                        EMILE A. HENDERSON III
                                        U.S. MAGISTRATE JUDGE